IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Lannie Muhammad,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____ | Civil Action No. 2:10-739-MBS-BHH<br><br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Lannie Muhammad, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 50 years old on the alleged amended disability onset date.  (R. at 118.)  She has a high school education and some college, but did not obtain a degree. (R. at 31.)  She has past relevant work as a process operator. (R. at 154.)  She alleges she has been disabled since October 1, 2006,[2] due to lumbar spondylosis, benign positional vertigo, chon's disease, HBP, and thyroid problems.  (R. at 168, 170-73.)

The plaintiff applied for disability insurance benefits on February 13, 2008.  (R. at 118.)  Her application was denied in an initial determination and upon reconsideration.  (R.

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[2] This date was amended by plaintiff's counsel in a letter dated July 10, 2009.  (R. at 109-110.)  The original disability onset date was October 15, 2005.

at 86, 94.) An administrative hearing with an Administrative Law Judge was held on August 6, 2009. (R. at 23-60.) On November 13, 2009, in an unfavorable decision, the ALJ found that plaintiff was not disabled within the meaning of the Act. (R. at 6-17.) As the Appeals Council denied the plaintiff's request for review (R. at 1-4), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)   The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.
>
> (2)   The claimant has not engaged in substantial gainful activity since October 1, 2006, the amended alleged onset date (20 CFR 404.1571 *et seq.*).
>
> (3)   The claimant has the following severe impairments: degenerative disc disease with spondylosis, right carpal tunnel syndrome, asthma, and vertigo (20 CFR 404.1520(c)).
>
> (4)   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5)   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404-1567(b) except repetitive movement of the right shoulder/wrist, overhead reaching with the right dominant upper extremity, and fine/gross manipulation with the right hand are all limited to no ore than frequent. The claimant can occasionally perform all postural activities except she cannot climb ladders. Considering her asthma and vertigo, the claimant should avoid concentrated exposure to fumes, gases, odors, and dust and must avoid hazards.
>
> (6)   The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> (7)   The claimant was born on August 5, 1956, and was 50 years [old] which is defined as closely approaching advanced age, as of the amended onset date (20 CFR 404-1563).

> (8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> (9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2006, through the date of this decision(20 CFR 404.1520(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful

employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

4

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. The plaintiff has made essentially one objection to the administrative decision. Specifically, the plaintiff contends that the ALJ failed to give the opinion of her treating physician, Dr. Ronald DeGarmo, controlling weight.

Dr. DeGarmo submitted two opinion statements simultaneously, on or about August 4, 2009. The first was a checkbox form which indicates that he believes the plaintiff can lift only ten pounds occasionally, due to neck pain, low back pain, cervical radiculopathy, and sciatica. (R. at 486.) The opinion states further that she can sit for only two of eight hours, stand for only one of eight hours, and walk for only one of eight hours. (R. at 487.) It reports that at times she needs a cane, and that she can only walk for about five minutes without one. *Id.* Dr. DeGarmo also reported that the plaintiff needs to elevate her legs to hip height for one or two hours over the course of an eight hour day, and can only occasionally use her upper extremities for reaching, handling, fingering, feeling, pushing and pulling. (R. at 487-88.) He predicted that the plaintiff would miss work more than three times a month and states that pain would frequently interfere with attention and concentration needed to perform even simple work tasks. (R. at 490.)

The second opinion statement is a two page narrative which sets forth the plaintiff's entire treatment history, with Dr. DeGarmo, from March 27, 2003 through May 12, 2009. (R. at 492-93.) It indicates that the plaintiff could not be gainfully employed, because she could not work an eight hour day or a forty hour week without multiple breaks. (R. at 493.)

5

He adds that irritable bowel syndrome would produce a need for immediate access to a toilet, and that strong pain medications for her severe back pain would affect her concentration. *Id.* Forty three visits are described. (R. at 492-93.)

It is true that the medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *See Blalock*, 483 F.2d at 775.

The ALJ principally found that Dr. DeGarmo's opinions were inconsistent with other evidence of record. A treating physician's opinions may be rejected or discounted when those opinions are unsupported by the physician's own treatment notes. *See Johnson v. Barnhardt*, 434 F.3d 650, 656 n.8 (4th Cir. 2005); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ specifically noted that Dr. DeGarmo's identification of debilitating pain and limitation were inconsistent with the doctor's own treatment notes. (R. at 15.) The ALJ thought there was a notable disconnect between Dr. DeGarmo's opinion in February 2007 that the plaintiff was only limited in her ability to stand and the wide ranging and severe limitations reflected in the August 2009 opinion, described above. (R. at 15.) The ALJ disagreed that Dr. DeGarmo's treatment notes consistently identified objective evidence that would support this severe degree of impairment (R. at 15 "which, at times, reflect normal

musculoskeletal findings".)  It is largely undisputed that, throughout the relevant period, Dr. DeGarmo documented benign or normal objective findings.  He observed that the plaintiff's neck was supple, (R. at 299, 325), and neurological and musculoskeletal examinations generally gave "normal" findings, (R. at 319, 320, 322, 324, 441, 443, 444, 445, 471, 473, 475, 476, 477, 483, 484).  For instance, in June 2007, although the plaintiff complained of lower back pain, Dr. DeGarmo found that the plaintiff's range of motion was not limited on examination.  (R. at 321 "good ROM" circled.) As the defendant argues, Dr. DeGarmo did not consistently document a limited range of motion, pain behavior, weakness, or radiculopathy.

The plaintiff herself admits that Dr. DeGarmo's treatment notes report musculoskeletal findings "inconsistently." (Pl. Brief at 8.)  She concedes that a review of Dr. DeGarmo's treatment notes reveal that they are somewhat lacking in detail, consisting largely of checks on checklists, and the written portion is of obscure legibility. But, the plaintiff attempts to argue the condition of the records to her benefit contending that their deficiency makes the value of the typewritten narrative all the more illuminating.  This is one reasonable view.  The other, held by the ALJ, is that the narrative is whole cloth and an unsupported departure from a previously noncompelling medical history.  It is frankly not the undersigned's duty to decide between them.  It is enough that both views are reasonable and that the ALJ's position is supported by substantial evidence in the form of an inconsistent record, which the plaintiff herself concedes.

The ALJ also notes that, while the plaintiff's pain requires use of Lortab, which might affect her concentration for its strength, the record actually reflects no such effect.  Dr. DeGarmo did not describe either the plaintiff's subjective reports or his own observations of mental limitations that might arise from Lortab. (See R. at 320, 440-445, 470-477, 483, 484.)  The plaintiff deflects by stating that it should be no surprise that such remarks are not present because, "Dr. DeGarmo's notes are simply not detailed enough to cover issues

7

such as that." (Pl. Brief at 8.)  She states, "There is nothing in the records to indicate that the Lortab is working effectively, either." *Id.*

But, such is the point.  The deficiency lies with the evidence not the ALJ.  The undersigned would not count it as ALJ error, where she was unpersuaded by an ultimate disability opinion that had no serious precedent in the medical history.  The plaintiff's explanation of the medical history is not without force but that does not make the ALJ's view unjustified.  And, the mere fact that the plaintiff might produce evidence from which one might conclude differently than the ALJ, as she has, is of no consequence, so long as the ALJ has cited substantial evidence in support.  She did.  And, her view of it remains essentially uncontroverted.  *See Blalock*, 483 F.2d at 775; *Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir. 1984) ("[I]t is immaterial that eight medical witnesses disagreed with the ALJ's conclusion, provided that one such witness gave sufficient probative evidence.").

The plaintiff also attempts to challenge the ALJ's consideration of Dr. DeGarmo's opinions as though they were rejected *for* some inconsistency with state-agency nonexaming physicians' opinions.  That is not what the decision states.  Dr. DeGarmo's opinions were rejected for reasons independent of any tension with the state agency opinions.  As discussed, Dr. DeGarmo's opinions and records failed to be internally corroborative.  As a result, the ALJ need not have defended her acceptance of the state agency opinions to necessarily justify her rejection of DeGarmo's.

To the extent the plaintiff has challenged the specificity of the ALJ's analysis, the Court would simply disagree.  For all the items recited, the ALJ has been sufficiently specific.  An ALJ is not required to provide a written evaluation of every piece of evidence, but need only "minimally articulate" his reasoning so as to "make a bridge" between the evidence and his conclusions.  *Fischer v. Barnhart*, 129 Fed. Appx. 297, 303 (7th Cir. 2005) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir.2004)); *see also Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered") (citations

omitted). The ALJ expressly concluded that "normal musculoskeletal findings" were present in the record, inconsistent with the degree of limitation prescribed in the disability opinions. (R. at 15.) The ALJ, further and specifically, identifed a lack of discussion of any effects of Lortab might have actually had on the plaintiff's concentration. *Id.* This is enough.

The ALJ also noted that the claimant has undergone extensive evaluations by an [ears, nose, and throat] ENT specialist, neurologist, and gastroenterologist and none of these specialists has identified any limitations." (R. at 15.) For other substantial evidence, already considered and accepted, the Court need not say much. The plaintiff again suggests that there should be no surprise that physicians, focused on diagnosis, would not include functional observations and, therefore, such records cannot be said to be "inconsistent" with the opinion of Dr. DeGarmo who was specifically asked to address functional limitations. The point is not unpersuasive.

But, the defendant has pointed to reasonably viewed inconsistencies. Gastroenterologist Ali Yazdy, M.D., noted in March 2008 that the medication Lomotil "somewhat improved" the plaintiff's diarrhea symptoms. (R. at 348.) In May 2008, Dr. Yazdy noted, "She took Azuldfidine and developed diarrhea. She does not have any problem if she does not take that one." (R. at 379.) The Court would agree that the ALJ would be permitted to view these relatively benign observations as inconsistent with the opinions of Dr. DeGarmo, who suggested that the plaintiff's gastrointestinal impairment caused diarrhea "without warning" and would limit her ability to work. (See R. at 492). Also, Neurologist Arthur Smith, M.D., treated the plaintiff's lower back pain. And, although the doctor wrote an unaddressed letter stating the plaintiff "should not articipate in any exercise program" (R. at 220), he referred the plaintiff to physical therapy and observed that physical therapy and chiropractic treatment helped the plaintiff's back pain. (R. at 221, 225.) The Court would agree that these examples are more than just silence regarding the plaintiff's functional limitations, about which the ALJ simply guessed to fill in the blanks. Unfortunately, this objection implicates another situation where the record was open to more than one

interpretation based on the evidence at hand and the Court cannot disturb the ALJ's conclusion reasonable drawn, whether the plaintiff, or even the Court, might have viewed it differently.

The Court is constrained to defer to a sufficient, albeit less than perfect, consideration of the plaintiff's treating physician.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED

                    s/Bruce Howe Hendricks
                    United States Magistrate Judge

February 25, 2010
Charleston, South Carolina